Vincent GEORGE, Cyril Matthew, George Joseph, Plaintiffs–Appellants,

v.

U.S. POSTAL SERVICE, John Potter, Postmaster General, National Postal Mailhandlers Union, Defendants–Appellees.

No. 06–2217–cv.

United States Court of Appeals, Second Circuit.

Feb. 22, 2008.

---

Marc L. Glenn, Law Office of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiffs–Appellants.

Victoria Shin, Assistant United States Attorney (Kevin J. O'Conner, United States Attorney for the District of Connecticut, William J. Nardini, Assistant United States Attorney, on the brief), New Haven, CT, for Defendants–Appellees.

John M. West, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., for Defendant–Appellee National Postal Mailhandlers Union.

PRESENT: Hon. JON O. NEWMAN, Hon. RALPH K. WINTER and Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Plaintiffs-appellants Vincent George, Cyril Mathew and George Joseph (collectively the "Plaintiffs") appeal from a March 31, 2006, 2006 WL 798924, judgment of the United States District Court for the District of Connecticut (Dorsey, J.), granting summary judgment in favor of the defendant-appellees U.S. Postal Service, Postmaster General John Potter (collectively the "Postal Service"), and the National Postal Mailhandlers Union (the "Union," and together with the Postal Service, the "Defendants"). We assume the parties' familiarity with the facts and procedural history of the case.

Plaintiffs assert that the district court erred in granting summary judgment to the Defendants on the ground that genuine issues of material fact exist with respect to its claims (1) against the Postal Service for breach of the collective bargaining agreement ("CBA"); and (2) against the Union for breach of its duty of fair representation by declining to prosecute grievances against the Postal Service on Plaintiffs' behalf in connection with their contention that they should have been converted from part-time flexible employees to full-time regular mail handlers. We review the district court's grant of summary judgment *de novo*. *See Sanozky v. Int'l Ass'n of Machinists and Aerospace Workers*, 415 F.3d 279, 282 (2d Cir.2005).

Because the grievance and arbitration procedures provided for in the CBA otherwise preclude judicial recourse, *see Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Plaintiffs must demonstrate at the threshold that the Union breached its duty of fair representation in order to recover against either the Postal Service or the Union. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Young v. U.S. Postal Service*, 907 F.2d 305, 307 (2d Cir.1990). "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (internal citation and quotation marks omitted). To uphold a union's action in interpreting a contract, we need not find that the union's

interpretation was correct, only that its interpretation was reasonable. *See Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 127–29 (2d Cir.1998).

Here we find that the Union's determination not to pursue Plaintiffs' proposed grievances was based on a reasonable interpretation of Article 7.3 of the CBA, which provides in relevant part:

> The [Postal Service] shall staff all postal installations ... with 90% full-time mail handlers.... The [Postal Service] shall maximize the number of full time employees and minimize the number of part-time employees who have no fixed work schedule in all postal installations. A part-time flexible employee working eight (8) hours within ten (10), on the same five (5) days each week over a six-month period will demonstrate the need for converting the assignment to a full-time position.

Plaintiffs do not dispute the Union's contention that, upon receiving Plaintiffs' proposed grievances, the Union checked Plaintiffs' work schedules during the relevant period and determined that they had not satisfied the hourly standards provided for in Article 7.3. Nor do Plaintiffs dispute the Union's determination that, during the relevant time, the postal facility at issue was well above the 90% level of full-time employment required by Article 7.3.

Finally, there is no dispute that the Union considered the fact that the Postal Service had exercised its right under Article 12 of the CBA to hold open job vacancies for other employees whose full-time statuses were otherwise in jeopardy based on new mail-sorting equipment and a consolidation of two Connecticut postal facilities.[1]

Instead, Plaintiffs assert that the Union's decision not to pursue their grievances was arbitrary on the ground that some arbitrators had interpreted Article 7.3 as requiring something less than strict compliance with that provision's hourly standards. *See, e.g., In re USPS and NPMHU*, No. J98M–IJ–C 99236940 ST05099, at 5 (2000); *In re USPS and NPMHU*, No. E00M1E–C03140540 SJ 1003, at 9 (2004). We reject this contention because, despite these arbitral decisions, we cannot say that the Union's interpretation and application of the CBA was unreasonable.[2] To begin with, the facts in this case are distinguishable because Plaintiffs' work schedules fell significantly short of the standards articulated in Article 7.3, whereas the hourly variances in the arbitral cases upon which Plaintiffs rely were *de minimis*. Moreover, the arbitral cases relied upon by Plaintiffs do not resolve the interplay between Article 7.3 and Article 12 of the CBA, which had factored into the Union's analysis.

---

1. We need not, and do not, decide the legal issue of whether Article 12 trumps Article 7.3, as the Postal Service maintains. We conclude only that the job-hold was a factor contributing to the reasonableness of the Union's determination not to pursue Plaintiffs' proposed grievances.

2. The Plaintiffs did not provide the Union with copies of or citations to the arbitral decisions at the time of their grievances. Mathew testified in his deposition that he had told the Union's president about the existence of arbitral decisions that he believed supported his position years before filing a formal grievance, but stated that he had not provided copies or citations to those decisions. George testified in his deposition that prior to filing a grievance he had shown to the Union's president copies of arbitral decisions that George believed supported his position, but he does not state which arbitral decisions were provided. Assuming we accept that the Union was aware of the arbitral decisions on which Plaintiffs rely, we find, for the reasons discussed in the text, that no genuine issue of material fact exists with respect to the Plaintiffs' claim of unfair representation.

Because Plaintiffs present no material facts which might tend to undermine the reasonableness of the Union's actions in this case, we affirm the district court's finding that the Union did not violate its duty of fair representation. *See Sanozky,* 415 F.3d at 282–83 (affirming district court's grant of summary judgment on issue of union's fair representation). This holding necessarily bars Plaintiffs' claims against the Postal Service, because any action against it for breach of the CBA was not exhausted through the arbitral process. *See DelCostello,* 462 U.S. at 164–65, 103 S.Ct. 2281.

For the foregoing reasons, the district court's judgment is AFFIRMED.